UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| James Degorski, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:23-CV-04921 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Rob Jeffreys, individually; Jose Becerra, individually; Lusecita Galindo, individually; David Gomez, individually as Warden of Stateville Correctional Center; Charles Truitt, individually as Warden of Stateville Correctional Center; Ambrosio Vergara; Aaron Durham; Unknown Stateville Cadette; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

James Degorski brings this civil rights lawsuit, 42 U.S.C. § 1983, against various Illinois prison officials: Rob Jeffreys, Jose Becerra, Lusecita Galindo, David Gomez, Charles Truitt, Ambrosio Vergara, Aaron Durham, and an Unknown Stateville Cadette. R. 65, First Am. Compl.; R. 100, Second Am. Compl.[1] Degorski claims that the Defendants were deliberately indifferent to his serious medical needs arising from a severe wrist injury. First Am. Compl. at 15–16; Second Am. Compl. at 15–16. Three of the prison officials—Charles Truitt, David Gomez, and Rob Jeffreys—move to dismiss the claims against them, arguing that they cannot be held vicariously

---

[1]Citations to the record are noted as "R." followed by the docket entry and, if needed, a page or paragraph number. The Court has subject matter jurisdiction over this Section 1983 lawsuit under 28 U.S.C. § 1331.

liable for the quality of medical care provided to Degorski. R. 90, Defs.' Mot. For the reasons discussed in this Opinion, the motion is denied.

## I. Background

In deciding a motion to dismiss, the Court accepts all well-pleaded factual allegations in the Complaint as true and draws all reasonable inferences in the plaintiff's favor.[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Degorski was an inmate at Stateville Correctional Facility. First Am. Compl. ¶ 4; Second Am. Compl ¶ 4. In July 2021, with summer at full steam, the housing unit was extremely hot. Degoriski woke up one morning sleep-deprived and disoriented and then fell off his top bunk onto the concrete floor. First Am. Compl. ¶¶ 16–18; Second Am. Compl. ¶¶ 16–18. The fall shattered multiple bones in Degorski's left hand and bruised his hip, knee, and toes. First Am. Compl. ¶ 19; Second Am. Compl. ¶ 19. Hours later, he received medical attention from a doctor, who recommended that Degorski return to the doctor's office within a week to schedule a surgery to repair his hand. First Am. Compl. ¶ 20; Second Am. Compl. ¶ 20. In the interim, Degorski was housed in Stateville's sweltering infirmary unit, which was infested with cockroaches and gnats. First Am. Compl. ¶¶ 21, 23; Second Am. Compl. ¶¶ 21,

---

[2]The operative complaint is now the Second Amended Complaint. At the time that this motion was briefed, the operative complaint was the First Amended Complaint. The parties agreed that the briefing on this motion did not substantively change with the filing of the Second Amended Complaint. *See* R. 101, Joint Status Report; R. 102, Minute Entry. So this Opinion cites to paragraph numbers from both pleadings.

23. Before receiving surgery one month later, Degorski felt shooting pain in his arm and could not move his fingers. First Am. Compl. ¶¶ 21, 28; Second Am. Compl. ¶¶ 21, 28. According to Degorski, the month-long delay between the injury and the surgery required him to have a more painful and intensive operation. First Am. Compl. ¶ 29; Second Am. Compl. ¶ 29.

After the surgery, Degorski continued to experience shooting pain, swelling, numbness, and difficulty with moving his hand and fingers. First Am. Compl. ¶¶ 31, 33; Second Am. Compl. ¶¶ 31, 33. Many times over the next eight months, he did not receive his prescription pain medication when various Defendants ran out of the medicine or forgot to order it. First Am. Compl. ¶¶ 30, 35, 37; Second Am. Compl. ¶¶ 30, 35, 37. Degorski filed multiple grievances about the Defendants' failures to provide medical care to his wrist and to administer the pain medication. First Am. Compl. ¶ 38; Second Am. Compl. ¶ 38. When his pain and problems with hand mobility continued, Degorski spoke with a nurse practitioner about having a follow-up appointment. First Am. Compl. ¶ 39; Second Am. Compl. ¶ 39. Although the nurse acknowledged that Degorski needed follow-up care, 72 days passed before he was brought to the nerve clinic, where a doctor evaluated his hand and recommended a second surgery. First Am. Compl. ¶¶ 39, 43–44; Second Am. Compl. ¶¶ 39, 43–44. After an eight-month delay by prison officials in approving and scheduling the surgery, he finally underwent surgery in August 2022. First Am. Compl. ¶¶ 41, 48, 50; Second Am. Compl. ¶¶ 41, 48, 50.

### A. The *Lippert* Report

In the Complaint, Degorski goes beyond making allegations specific to his own experience; he also sets forth various findings from an expert report issued in 2018 that was completed by a team of court-appointed experts in *Lippert v. Baldwin*, a case that dealt with the inadequacy of healthcare services at IDOC facilities. First Am. Compl. ¶ 53; Second Am. Compl. ¶ 53; (citing *Lippert v. Baldwin*, 2017 WL 1545672, at *1 (N.D. Ill. Apr. 28, 2017)). Degorski alleges that the *Lippert* experts uncovered numerous "breakdowns in every area" in Wexford's (the prison's health provider) policies and practices at Stateville, such as inadequate medical staffing, issues and delays with medical-record use and filing, the failure of nurses to follow treatment protocols, unreliable tracking of specialty care logs, and an unsafe patient medication-administration system. First Am. Compl. ¶ 53; Second Am. Compl. ¶ 53.

Due to the allegedly inadequate medical care he received, Degorski sued various prison officials, including the three Defendants who have filed the motion to dismiss. First Am. Compl. at 15–19; Second Am. Compl. at 15–19. Defendants Jeffreys, Gomez, and Truitt move to dismiss the deliberate-indifference claims against them for failure to adequately state a claim. *See* Defs.' Mot.; Fed. R. Civ. P. 12(b)(6).

### II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

4

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

The three Defendants at issue argue that Degorski's claim against them must be dismissed because they cannot be held vicariously liable for the quality of medical care provided to Degorski.[4] R. 91, Def.'s Br. at 4–6. During the relevant time, Truitt and Gomez were Wardens at Stateville (at separate times), and Jeffreys was the

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[4]The Defendants' partial motion to dismiss does not target Degorski's claim against the three of them for the prison's alleged inhumane conditions of confinement.

5

Director of the Illinois Department of Corrections (commonly referred to as the IDOC). First Am. Compl. ¶¶ 7–8; Second Am. Compl. ¶¶ 7–8. The three Defendants assert that they did not have any personal involvement in the provision of medical care at Stateville. Defs.' Br.. at 5.

The Eighth Amendment protects inmates against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Negligence is not enough to state a claim: liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (cleaned up). To win on a claim for deficient medical care, the inmate must show an objective element and a subjective element: (1) an objectively serious deprivation; and (2) the official's subjective deliberate indifference to the condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006); *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016).

The statute that provides the vehicle for bringing a deliberate-indifference claim under the Eighth Amendment is 42 U.S.C. § 1983. Under that law, inmates have a cause of action only against prison officials who personally participated in the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Inmate cannot base a § 1983 claim on a theory of *respondeat superior* liability, that is, liability based solely on the supervisory role of a defendant. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Instead, Degorski must establish (or at the pleading stage, adequately allege) that Jeffreys, Truitt, and Gomez were "personally responsible for the deprivation of a constitutional right." *Johnson*, 444 F.3d at 583.

6

To adequately allege personal involvement for deliberate indifference, Degorski must allege that Jeffreys, Gomez, and Truitt "*actually* knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. But Degorski need not allege that the medical treatment was *intentionally* inadequate or that the Defendants "intended, hoped for, or desired the harm that transpired." *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (cleaned up). Nor does Degorski need to show that he was completely ignored by Jeffreys, Truitt, and Gomez. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The test is whether the Defendants disregarded a serious risk of harm. With these principles in mind, first up is Jeffreys as the Director of the IDOC, and then Truitt and Gomez as Wardens of Stateville.

### 1. IDOC Director Jeffreys

Under Section 1983, supervisory officials may only be held liable for conduct absent direct personal participation if they allegedly "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Degorski alleges that IDOC Director Jeffreys was personally aware of the *Lippert* report findings and did not take reasonable steps to ensure that adequate care was provided. First Am. Compl. ¶ 54; Second Am. Compl. ¶ 54. He claims that Jeffreys "approved, condoned, facilitated, or turned a blind eye" to the systemic problems that affected Degorski and denied him constitutionally adequate care. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); R. 92-1, Pl.'s Resp. at 5. Degorski also maintains that Jeffreys was personally aware of his grievances about the failures to deliver care because Jeffreys

7

generally received prisoner grievances—including Degorski's. First Am. Compl. ¶ 54; Second Am. Compl. ¶ 54.

Taking Degorski's allegations as true, Jeffreys knew about the *Lippert* report's findings, which spelled out Stateville's systemic medical-care flaws, including the lack of adequate medical staff. First Am. Compl. ¶¶ 53–54; Second Am. Compl. ¶¶ 53–54. Indeed, as Director of the IDOC, it would be surprising if Jeffreys had *not* read the *Lippert* report. As the IDOC Director, Jeffreys had a responsibility to address the alleged medical-care deficiencies in general and to review appeals of inmate grievances specifically. 20 Ill. Admin. Code § 504.850(e) ("The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision"). Given the alleged awareness of the report's findings and the alleged failure to take steps to resolve the problems—including the problems that would specifically cause the medical-care delays that Degorski experienced—the pleadings adequately allege that Jeffreys was deliberately indifferent to Degorski's serious medical needs and did not reasonably respond to the gaps in care. *Johnson*, 444 F.3d at 584; *Petties*, 836 F.3d at 729.

It is true that an inmate cannot simply gesture generally and vaguely to the *Lippert* report and blame Director Jeffreys for every medical-care failure as a product of deliberate indifference under the Eighth Amendment. But Degorski's Complaint is much more specific. In the Complaint, Degorski specifically identified what in the

8

*Lippert* report was relevant to the harm that he suffered. Degorski pointed to the findings on Stateville's inadequate staffing of medical personnel, medical record gaps, and an unsafe patient medication-administration system. First Am. Compl. ¶ 53; Second Am. Compl. ¶ 53. These deficiencies led to the harm that Degorski suffered: the long delays in performing surgery and the repeated failures to give him pain medication. First Am. Compl. ¶¶ 30, 35, 37, 41, 48, 50; Second Am. Compl. ¶¶ 30, 35, 37, 41, 48, 50. All in all, Degorski has pleaded concrete facts that adequately allege that Jeffreys was deliberately indifferent to Degorski's medical needs.

The Court notes that it certainly is possible that—in discovery—Jeffreys will demonstrate that he reasonably responded to the risks in medical care. In *Farmer v. Brennan*, the Supreme Court held that even if prison officials know of a substantial risk to inmate health or safety, they "may be found free from liability if they *responded reasonably* to the risk, even if the harm ultimately was not averted." 511 U.S. at 844 (emphasis added). If discovery shows that Jeffreys reasonably attempted to respond to Stateville's systemic medical-care problems, then summary judgment could be appropriate. At this pleading stage, however, Degorski has successfully alleged a deliberate-indifference claim against Jeffreys.

### 2. Wardens Truitt and Gomez

Gomez and Truitt were Wardens of Stateville during relevant (but separate) times, and these two Defendants also seek dismissal of the deliberate-indifference claims for lack of personal involvement. Defs.' Mot. at 1. Degorski bases his claims against Truitt and Gomez on both their involvement with the medical-care auditing

9

process and the *Lippert* Report. First Am. Compl. ¶¶ 56, 57; Second Am. Compl. ¶¶ 56, 57.

First, Degorski alleges that Truitt and Gomez were members of IDOC's medical-care audit committee, the Committee for Quality Improvement. First Am. Compl. ¶ 56; Second Am. Compl. ¶ 56. Based on their membership on the Committee, they had a duty to "review inmate grievances with regard to medical care, investigate the quality and appropriateness of care, and identify and solve problems in order [to] improve care." First Am. Compl. ¶ 56; Second Am. Compl. ¶ 56. And beyond the Committee membership, Degorski alleges that the two former Wardens also knew about the *Lippert* report and its findings.

In combination, these allegations give rise to the reasonable inference that Truitt and Gomez knew that inmates were not receiving adequate medical care (and the specific grounds for that conclusion) and failed to take steps to ensure that inmates, including Degorski, received necessary medical services. First Am. Compl. ¶ 57; Second Am. Compl. ¶ 57. The Committee membership might have been insufficient on its own because there is no allegation that Truitt and Gomez directly learned through the Committee about Degorski's specific medical-care delays. The Complaint does not allege that the Committee dealt with deficiencies in specialty care and medications not being delivered.

But Degorski also alleges that Gomez and Truitt knew about the *Lippert* report, which directly links them to the harm that Degorski suffered. Here, he claims that Truitt and Gomez knew that inmates were not receiving adequate medical care

10

and failed to take steps to ensure that inmates, including Degorski, received necessary medical services. First Am. Compl. ¶ 57; Second Am. Compl. ¶ 57. And it is plausible that Gomez and Truitt knew about the systemic problems that led to specific harm to Degorski. As Wardens of Stateville, it is plausible that they would have been aware of inadequate medical staffing and unsafe patient medication administration. First Am. Compl. ¶ 53; Second Am. Compl. ¶ 53. The problems identified by the *Lippert* report had been identified before 2021, when the events of this case happened. First Am. Compl. ¶ 58; Second Am. Compl. ¶ 58. Yet the problems at Stateville persisted. For now, at the pleading stage, the Court must credit the allegation that Truitt and Gomez ignored the risks and thus were deliberately indifferent to Degorski's serious medical needs. Again, like with Director Jeffreys, the former Wardens might have reasonably responded to (but not solved) the gaps in medical care, but this is the pleading stage.

## IV. Conclusion

The Defendants' motion to dismiss, R. 90, is denied because Degorski has plausibly alleged that they were deliberately indifferent to his serious medical needs.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 27, 2025